**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Helen Jane Romero, et al., | Case No.: 2:08-cv-808-JAD-VCF |
| Plaintiffs, | |
| v. | |
| Nevada Department of Corrections, et al., | **Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment [Doc. 81] and Denying Plaintiffs' Motion to Reopen Discovery [Doc. 134]** |
| Defendants | |

This civil rights and wrongful death action arises out of the death of Anthony G. Beltran, who was fatally stabbed by his cellmate Jason Potter on December 28, 2006, while the two men were inmates at the Ely State Prison ("ESP"), operated by the Nevada Department of Corrections ("NDOC"). Beltran's mother Helen Romero—as administratrix of Beltran's estate and as guardian ad litem of his children—sued NDOC; NDOC director Glenn Whorton; warden E.K. McDaniel; corrections officers Trent Howes, Michael Stolk, Theresa Landon, and Robert Otero; and caseworkers Robert Chambliss and Mark Drain. Doc. 24. Romero generally alleges that while Beltran was having his handcuffs fastened by guard Howes through the food slot in the cell door prior to being led to the shower, Potter attacked Beltran with a shank fashioned from a metal piece of a typewriter—all to gain greater status in the Aryan Warriors organization. Beltran was taken to a medical facility where he died of his 14 stab wounds.

Romero theorizes that Beltran's death "was made possible" by NDOC's policies and practices regarding cellmate selections and protecting prisoners from other violent inmates. Doc. 24

at 3-4.   She contends that the defendants acted with deliberate indifference to Beltran's safety and constitutional rights and asserts a § 1983 claim for violations of Beltran's Eighth and Fourteenth Amendment rights against NDOC Director Whorton, Warden McDaniel, and prison guards and caseworkers Howes, Landon, Otero, Drain, and Chambliss.  *Id*. at 17-22.  She also alleges a wrongful death claim against NDOC and the NDOC and ESP employees, along with claims against NDOC for negligent training, supervision and retention, and a vicarious liability claim against the State of Nevada.  *Id*. at 23-25.  Plaintiff also sues Doe and Roe Defendants I-X, specifically describing these fictitious defendants' purported roles.  *Id*. at 9-10.

On November 29, 2010, all defendants save Howes filed the instant Motion for Summary Judgment.  They argue that the § 1983 claim can only be brought on behalf of Beltran's estate and against defendants in their *personal* capacities, and, regardless, this multi-faceted claim fails for lack of evidence that these defendants personally participated in the conduct on which the § 1983 claim is based.  They contend that Romero's wrongful death claim fails because the attack was unforeseeable, and that her remaining claims for negligent training, supervision, retention, and vicarious liability fail for lack of evidence, and they further aver that they enjoy qualified immunity from all of Plaintiff's claims.  Finally, they ask the Court to dismiss the claims against the doe and roe defendants because, "despite ample discovery, Plaintiff has failed to replace the doe defendants with a named defendant."

The Court heard oral argument on this motion on October 1, 2013.  Having thoroughly evaluated the papers and heard and considered the parties' oral arguments, the Court grants the motion for summary judgment in part, dismisses the claims against the doe and roe defendants, and denies Plaintiff's motion to reopen discovery, all based on the reasons set below.

## I.   Scope of the Motion for Summary Judgment

The Court must first clarify which defendants joined in the Motion for Summary Judgment and may therefore benefit from its results.  Defendants' original motion was brought on behalf of NDOC, McDaniel, Stolk, Otero, Drain, Chambliss, Whorton, and Landon.  Doc. 81 at 1.  The motion concluded with a reference to "Defendants," without apparent limitation, *id*. at 27, but at the October 1, 2013, hearing, counsel for the Nevada Attorney General's Office, who serves as counsel

1  for the Moving Defendants indicated that it was her belief that she did not represent Howes and thus

2  he must be separately represented.  Docket entries, however, reflect that counsel for the Moving

3  Defendants also represents Howes, so the Court issued an Order requesting clarification on which

4  Defendants had joined in the motion.  Doc. 137 at 1.  The Nevada Attorney General's Office's status

5  report acknowledges that the office answered on Howes' behalf, Doc. 69, "[t]here have been no

6  subsequent motions to withdraw as counsel of record," Doc. 139 at 2, and thus, the Motion for

7  Summary Judgment was filed on Howes' behalf, too.  *Id.*  Romero disputes that Howes is a movant,

8  particularly because "the Deputy Attorney General advised the Court that she did not represent Trent

9  Howes" at the hearing.  Doc. 140 at 2.

10     The Court finds that the Motion for Summary Judgment failed to explicitly include Howes as

11  a moving defendant such that the Plaintiff had a fair opportunity to respond to the motion as to

12  Howes.  Fed. R. Civ. P. 56(b) closes the window for summary judgment motions "30 days after the

13  close of all discovery," unless the Court orders otherwise.  *Id.*  That deadline has long since passed.[1]

14  However, in light of the parties' mutual confusion, and to ensure that Plaintiff is afforded a full and

15  fair opportunity to respond to any arguments by Howes while also ensuring that this matter proceeds

16  to trial only on truly disputed issues, the Court will permit Defendant Howes the opportunity to file a

17  motion for summary judgment as to Romero's claims relating *only* to him.[2]

18     Defendant Howes shall have 21 days after the date of this Order to file such motion for

19  summary judgment.  Romero shall then have 21 days to respond, and Howes shall have 10 days to

20  file any reply.  The Court cautions the parties that in light of the already protracted history of the

21  summary judgment proceedings in this case, any request for an extension of these filing deadlines

22  will be viewed with extreme disfavor.

23

24

25     [1] Under the last of the parties' stipulated and court-approved scheduling-order extensions, discovery
26  closed three years ago on November 26, 2010, and the dispositive motion deadline passed on December 26, 2010.
   Doc. 77 at 4.

27     [2] This confusion distinguishes the Court's modification of the Scheduling Order to allow Defendant
28  Howes the opportunity to file this additional motion from its denial of the proposed extension of the discovery
   deadline discussed below.

1    **II.     Summary Judgment Standard and Burdens**

2         "A party may move for summary judgment, identifying each claim or defense—or the part of

3    each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).[3]  The

4    burdens on summary judgment are key.  A party seeking summary judgment bears the initial burden

5    of informing the Court of those portions of the pleadings and discovery that demonstrate the absence

6    of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the

7    nonmovant bears the burden at trial, the movant can meet its burden by either (1) presenting

8    evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the

9    nonmoving party failed to make a showing sufficient to establish an element essential to that

10   party's case. *See Celotex*, 477 U.S. at 323-24.  "When the party moving for summary judgment

11   would bear the burden of proof at trial, it must come forward with evidence which would entitle it to

12   a directed verdict of the evidence went uncontroverted at trial." *C.A.R. Transportation Brokerage*

13   *Co. v. Darden Resorts, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

14        After the movant has met its Rule 56(c) burden, the burden shifts to the nonmovant to come

15   forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita*

16   *Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  Although "[t]he

17   evidence of [non-movant] is to be believed, and all justifiable inferences are to be drawn in [her]

18   favor," *id.* at 587, she "must do more than simply show that there is some metaphysical doubt as to

19   the material facts." *Id.*  The nonmoving party cannot avoid summary judgment by relying solely on

20   conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

21   1989).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion

22   by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that

23   the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

24   party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).  "A trial court

25   can only consider admissible evidence in ruling on a motion for summary judgment," and evidence

26   _____

27        [3] Fed. R. Civ. P. 56 was amended on December 1, 2010, several days after Moving Defendants filed their
     motion, but "[t]he standard for granting summary judgment remains unchanged." *Id.,* advisory committee notes
28   (2010).  Although a new section to the Rule describes the types of orders the Court may issue to resolve factual
     disparities, the Court finds this difference not prejudicial to either party.

1   must be authenticated before it can be considered.  *Orr v. Bank of America*, 285 F.3d 764, 773-74

2   (9th Cir. 2002).  A principal purpose of summary judgment is "to isolate and dispose of factually

3   unsupported claims."  *Celotex*, 477 U.S. at 323-24.  "The court shall grant summary judgment if the

4   movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment

5   as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

6   (1986).

7   **III.      Plaintiff's Claims Against Doe and Roe Defendants and Motion to Reopen Discovery**

8          Moving Defendants seek summary judgment on all claims asserted against doe and roe

9   defendants on the basis that Plaintiff has made no effort to amend the complaint to specifically name

10  these individuals and serve them with process so they can participate in this five-year-old case.  Doc.

11  81 at 26-27.  They contend that dismissal of fictitious defendants is required when the Plaintiff—like

12  Romero—has failed to request amendment to substitute known persons in place of does and roes

13  before the expiration of the amendment deadline.  *See id.*  Plaintiff offers zero response to this

14  argument.  Instead, she asks in a separate motion filed nearly three years after the summary

15  judgment motion to reopen discovery to allow her to take the defendants' depositions—depositions

16  that were originally noticed for Fall of 2010 but were purportedly vacated to accommodate a conflict

17  in defense counsel's schedule.  Doc. 134 at 2.  The Court finds that the delays and comprehensive

18  lack of discovery diligence in this case preclude a finding of good cause necessary to amend the

19  scheduling order to allow this extraordinary late discovery or the maintenance of doe-and-roe-

20  defendant claims.

21          **A.      Dismissal of the Doe and Roe Defendants Is Required Because the Deadline for
                      Substituting Parties Has Long-Since Run and Plaintiff Has Not Demonstrated
22                    Good Cause for a Much-Belated Extension.**

23          When pleading-amendment deadlines have expired and no leave to amend a complaint has

24  been requested, a party is no longer entitled to substitute new defendants for fictitious defendants.

25  *See e.g. Maestrini v. City and County of San Francisco*, 2009 WL 814510, at *11-*12 (N.D. Cal.

26  Mar. 26, 2009).  The appropriate course of action is to dismiss all claims against the doe and roe

27  defendants without prejudice.  *Johnson v. Meltzer*, 134 F.3d 1393, 1396 (9th Cir. 1998) (remedy for

28  failure to timely serve is dismissal without prejudice, not summary judgment).

1    ***1.      The Deadline to Amend Pleadings Expired Three Years Ago.***

2         Defendants' interrogatory responses served in August 2009 revealed the names of the

3    individuals who fit the doe-and-roe-defendant descriptions in Plaintiff's Amended Complaint.  *See*

4    Doc 104-2 at 1-46.  The deadline for amending pleadings in this case expired ten months later on

5    June 29, 2010.  Doc. 73 at 3.  Plaintiff made no effort to amend her complaint to substitute the doe

6    and roe defendants for those individuals identified in the interrogatory responses either before or

7    after the amendment deadline ran.  To seek leave now at this late juncture, Plaintiff must first

8    overcome Rule 16(b), which allows a scheduling order to be modified "only for good cause and with

9    the judge's consent."  Fed. R. Civ. P. 16(b)(4); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-

10   95 (9th Cir. 2000).  "Rule 16(b)'s good cause standard primarily considers the diligence of the party

11   seeking amendment."  *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d

12   716, 737 (9th Cir. 2013); *see, e.g.*, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09

13   (9th Cir. 1992) (finding that four-month delay in seeking leave to amend complaint failed to

14   demonstrate good cause).  The lengthy history of delays and inaction in this case prevents Plaintiff

15   from demonstrating diligence.

16
     ***2.      Plaintiff Cannot Demonstrate Good Cause to Amend the Scheduling Order***
17   ***to Allow Late Amendment.***

18        This case commenced in May 2008, and the parties submitted a joint discovery plan to the

19   Court more than five years ago.  Docs. 1-3; 33.  The plan proposed a pleading-amendment deadline

20   of December 9, 2008, and a discovery cut-off of March 9, 2009, and the court adopted these dates in

21   its October 1, 2008, Scheduling Order.  Doc. 34.  These dates were extended via stipulation five

22   times over two years; after the fifth request, discovery closed on November 26, 2010.[4]  On October

23   10, 2010, the parties filed a sixth request to extend the discovery period on the grounds that Potter

24   "has made a proffer that neither side will be able to obtain until Joey Sellers [an Aryan Warrior

25   inmate charged with conspiracy for Beltran's murder] goes to trial," Doc. 80 at 3, and that "[o]ther

26   _____

27        [4] November 24, 2008, Doc. 41 at 2; June 24, 2009, Doc. 49 at 4; September 16, 2009, Doc. 56 at 4
     (explaining that, *inter alia*, "Plaintiff needs to propound written discovery to the Defendant Officers" to obtain
28   certain recorded statements, and "[o]nly after the statements have been received and reviewed with Plaintiff
     reschedule Defendant officers' depositions."); April 16, 2010, Doc. 73 at 4; and August 17, 2010.  Doc. 77.

1    depositions will need to be set, including but not limited to the depositions of the experts and

2    rebuttal expert witnesses disclosed." *Id.* at 4.  This sixth request did not seek an extension of the

3    pleading-amendment deadline, so the deadline for seeking leave to amend the complaint was set at

4    June 29, 2010.  Doc. 73 at 3.

5         On November 29, 2010, Moving Defendants filed the instant motion for summary judgment.

6    The parties stipulated to extend Plaintiff's response deadline because Plaintiff's "counsel has been

7    involved in numerous depositions" in another matter and had an upcoming family wedding and

8    surgery scheduled; the Court never approved that stipulation.  Doc. 83 at 2.  Nevertheless, on

9    January 20, 2011, the parties filed a seventh request for an extension of the discovery period in

10   which they explained that their sixth stipulation "was not ordered due to deficiencies" in that

11   document, which they claimed were "addressed" in the new request, and they asked for a

12   continuance of the discovery deadlines until January 27, 2012.  Doc. 85 at 5.  The request was

13   denied.  Doc. 92 at 2.

14        When the extended due date for Romero's response to the motion for summary judgment

15   arrived, she filed an emergency motion to extend the deadline yet again, primarily due to the

16   pending Sellers trial.  Doc. 86.  After a hearing, the Court ordered that some of the summary

17   judgment issues could be addressed without waiting for the Sellers trial to conclude, and Plaintiff

18   was directed to respond to those issues by April 20, 2011, reserving response on the remaining

19   issues until after the Sellers trial concluded.  Doc. 92 at 2.  On the eve of the extended deadline,

20   Plaintiff filed yet another emergency motion for an extension of time claiming that both of Plaintiff's

21   counsel were once again occupied with other matters.  Doc. 94 at 3-4.  The Court granted this

22   motion in a minute order that cautioned counsel that "no further extensions w[ould] be granted."

23   Doc. 95.

24        On May 20, 2011, Plaintiff filed her 66-page opposition, Doc. 96, but it was stricken from

25   the record for failure to comply with Local Rule 7-4.  Finally, on July 6, 2011, more than seven

26   months after the motion was filed, Plaintiff's opposition was filed and accepted into the record.

27   Docs. 100, 104.  The very next day, however, Plaintiff moved to stay the summary judgment

28   proceedings to allow her to obtain an additional FBI 302 report.  Doc. 105 at 5.  And although the

amendment deadline had passed more than a year earlier, the accompanying affidavit also averred that Plaintiff "still need[s] information in order to identify the doe defendants." *Id.* The summary judgment proceedings were temporarily stayed on October 19, 2011. Doc. 115. The Court conducted a hearing on the status of those discovery efforts on December 13, 2011, at which Plaintiff's counsel advised, "counsel informs the Court that **no other discovery is required in this case**, except for obtaining Ronald Seller's (aka Joey) report from the FBI." Doc. 119 (emphasis added). The parties also noted that Sellers was scheduled to be sentenced on January 11, 2012, and that a subpoena for the report would be issued to Sellers' defense counsel with a return date of January 13, 2012. *Id.*

On January 3, 2012, the subpoena was returned executed. Doc. 120. On February 17, 2012, **445 days after Moving Defendants originally moved for summary judgment**, Plaintiff filed her amended response in opposition. Doc. 121. Except for a sprinkling of additions found on pages 10 and 27 of the amended document and some docket references added to the citations, Plaintiff's original opposition (Doc. 104) and her amended version (Doc. 121) are identical. Moving Defendants filed their reply on March 9, 2012. Doc. 122. On July 19, 2012, Plaintiff filed an "errata" to her amended response, attaching "the FBI 302 file for Douglas Potter from the U.S. Department of Justice pursuant to its December 6, 2011 and January 4, 2012 FOIA requests." Doc. 123 at 2.

On August 9, 2013, Chief Judge Robert Jones assigned this case to the undersigned. Doc. 127. At a September 10, 2013, status conference, Plaintiff's counsel made an oral request to "take further depositions in this case." Doc. 133. Moving Defendants objected. *Id.* Plaintiff then filed a motion to extend the discovery period, to take the depositions of the defendants she had originally scheduled—but vacated—in 2010. *See* Doc. 134. Plaintiff did not request an extension of the amendment deadline or indicate any hope that the discovery gleaned from the depositions will give her the opportunity to substitute the names of the doe and roe defendants. Instead, she cites a 2011 remark from Magistrate Judge Leavitt that "justice hurried may be justice denied." *Id.* at 4 (quoting

1   Doc. 114 at 1).[5]

2       This Court is confident that the risk of hurried justice has been throughly averted in this five-

3   year-long, numerous-extension case with little completed discovery.  Plaintiff has had five years to

4   conduct discovery into the *names* of the doe and roe defendants and to seek leave of court to add

5   them to the complaint—far beyond what is commonly allowed for even the most complex matters.

6   And although the record suggests that Plaintiff knew the names and identities of doe defendants by

7   August of 2009, no effort—and certainly no timely effort—was made to seek leave to amend.  *See*

8   Docs. 74 at 3; 104-2 at 14; *see also* 111 at 5 (quoting Doc. 105 at 5).

9       Plaintiff offers no explanation for the failure to seek amendment prior to the June 29, 2010,

10  amendment deadline, and she does not now contest this dismissal.  There is no allegation that

11  Moving Defendants have ever actively concealed evidence from Plaintiff, and over the five-year

12  history of this case neither party has filed a motion to compel or for a protective order.

13  To find that Plaintiff has "good cause" to offer any proposed amended complaint now would render

14  the Rule 16(b) standard utterly meaningless.[6]  Moving Defendants' request to dismiss the doe and

15  roe defendants is granted, and these defendants are dismissed without prejudice from this action.

16  *See Meltzer*, 134 F.3d at 1396.

17

18

19

---

20      [5] The contextual relevance of this remark has already deteriorated beyond recognition because Sellers'
    criminal trial, which precipitated the stay of this action and the remark, concluded in early 2012.  *See* Doc. 119.

21

22      [6] Even if there were good cause to amend the scheduling order and allow the substitution of named parties
    for fictitious ones, Plaintiff's proposed amendment still fails because the statutes of limitation on her claims have

23  expired.  "Futility alone can justify the denial of a motion to amend."  *See Johnson v. Buckley*, 356 F.3d 1067,
    1077 (9th Cir. 2004).  Amendment to assert claims against doe and roe defendants only relates back to the date

24  of the original filing to save claims from statutory denial "if, within the period provided by Rule 4(m) for serving
    the summons and complaint, the party to be brought in by amendment: (i) Received such notice of the action that
    it will be not prejudiced in defending on the merits; and (ii) Knew or should have known that the action would

25  have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P.
    15(c)(1)(C).  Neither prong of the relation-back test is met here.  Even if notice could be imputed to the doe and

26  roe defendants due to their employment by a named defendant, Plaintiff's failure to timely amend is not a
    "mistake" but rather a "knowing misidentification."  *Gray v. Warm Springs Correctional Center*, 2013 WL

27  4774632, at *4 (D. Nev. Sept. 4, 2013) (any proposed amendment would not relate back to the date of filing under
    Fed. R. Civ. P. 15(c)(1)(C) because naming a "doe" defendant is not a "mistake."  Mere "lack of knowledge is

28  not a mistake." *Butler v. Robar Enterprises, Inc.*, 208 F.R.D. 621, 623 (C.D. Cal. 2002) (quotation omitted); *see
    also Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 856 (D. Ariz. 1999).

**B.** **Plaintiff Has Not Demonstrated Good Cause to Resuscitate the Long-Expired Discovery Deadline.**

This same abject lack of diligence—and the absence of any reasonable explanation for Plaintiff's failure to reschedule the depositions that were canceled in September 2010 at any time during the last thousand-plus days[7]—prevent this Court from finding good cause to reopen discovery. This is particularly true as Plaintiff's counsel represented to the Court in December 2011 that there was no additional discovery (beyond obtaining the Sellers and Potter FBI reports) that needed to be performed. *See* Doc. 119. A request to reopen discovery is subject to the "good cause" standard of Rule 16(b) and requires the court to assess the diligence of the party seeking to amend the court's scheduling order. *Johnson*, 975 F.2d at 609; *Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1120-21 (D. Mont. 2000) (denying motion to reopen discovery for limited purpose of designating expert, where three prior extensions had been granted and deadline had passed fifteen months previously). As it is clear that diligence has not been exercised to obtain this discovery, the Court also denies Plaintiff's Motion for Discovery. Doc. 134.[8]

**IV.** **Motion for Summary Judgment on Claim #1 - Deprivation of Constitutional Rights Under 42 U.S.C. § 1983**

**A.** **Romero Lacks Standing to Assert a § 1983 Claim on Behalf of Beltran's Children**

Moving Defendants contend that Beltran's children Anthony, Britnie, and Christian lack standing to assert a § 1983 claim for the violations of Beltran's constitutional rights. Doc. 81 at 8. Plaintiff retorts that both parents and children have standing to maintain claims for constitutional deprivations based on loss of companionship. Doc. 121 at 13-14.[9] Although that may be true,

---

[7] "A party who fails to pursue discovery in the face of a court ordered cut-off cannot plead prejudice from his own inaction." *Rosario v. Livaditis*, 963 F.2d 1013, 1019 (7th Cir. 1992).

[8] Finding good cause, Defendants' motion to extend time for their response to the motion to reopen discovery [#136] is granted. The Court considered all briefs on this topic—Docs. 134, 138, 140, 142—before denying the motion to reopen discovery.

[9] As Plaintiff notes in her response, children may bring § 1983 claims based upon a deprivation of *their own* substantive Fourteenth Amendment due process rights when a parent's death divests them of a liberty interest in the parent-child relationship. *See* Doc. 121; *Mooreland*, 159 F.3d 365, 371 (9th Cir. 1998); *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). But Plaintiff's Amended Complaint does not allege—or even allude to—deprivations of Beltran's children's substantive due process rights. Plaintiff's § 1983 claim is based only on alleged deprivation of Beltran's own constitutional rights. *See* Doc. 24

Plaintiff has not pled a civil rights claim based upon the constitutional rights of anyone but Beltran, and that claim can only be maintained by his estate.[10]  *Moreland v. Las Vegas Metropolitan Police Department*, 159 F.3d 365, 369-70 (9th Cir. 1998) (citing NEV. REV. STAT. ANN. § 41.100(3) in the context of a Fourth Amendment claim and interpreting Nevada law as "extend[ing] the right to bring a survival action only to the official representatives of an individual's estate; no mention is made of a similar right extending to family members or heirs to bring a survival action independent or in lieu of the estate's claim.").   Accordingly, to the extent that Plaintiff's first claim for relief asserts a claim on behalf of Beltran's children, summary judgment is entered.[11]

**B.      Plaintiff Has Not Pled Claims Against Moving Defendants in their Official Capacities.**

*1.      NDOC*

Moving Defendants next seek summary judgment in favor of the NDOC and the State of Nevada to the extent they are sued in their official capacities. Doc. 81 at 8.  Plaintiff's § 1983 claim does not appear to be alleged against NDOC or the State of Nevada.  As Moving Defendants' argument is based on official-capacity allegations that have not actually been made, the motion is denied in this regard.

*2.      McDaniel, Whorton, Landon, Otero, Drain, and Chambliss*

Any argument for summary judgment on an official-capacity claim against Moving Defendants McDaniel, Whorton, Landon, Otero, Drain, and Chambliss[12] is similarly flawed.  Count one is only asserted against "Defendants McDaniel, Whorton . . . Landon, Otero, Drain, Chambliss, and Does I-X each in his or her *individual capacity*."  Doc. 24 at 17 (emphasis added).  Accordingly,

at p. 22.

[10] Moving Defendants concede that Plaintiff Romero is entitled to bring these claims on behalf of Beltran's estate.  *See id.*

[11] The confusion arises in part because, although this action is brought by a single person—Helen Romero—in multiple capacities (representative of Beltran's estate/guardian ad litem for his minor children), the Amended Complaint repeatedly refers to "Plaintiffs."

[12] Moving Defendants also seek to dismiss Does I-X in their individual capacities.  Having already dismissed these fictitious defendants from this action, the Court does not further consider how Moving Defendants' Motion relates to these fictitious defendants.

11

there is no official-capacity § 1983 claim against these individual defendants to adjudicate, and the motion in this regard is also denied.

### 3.   Stolk

Whether Plaintiff has sued Defendant Stolk in his official capacity is less clear.  Stolk is not listed in the heading that enumerates the defendants subject to Plaintiff's § 1983 claim, but the body of the count alleges that Stolk was "responsible for knowingly and purposefully placing . . . Beltran into a prison cell with Potter," that he later "failed to promptly obtain medical care for . . . Beltran," and finally "failed to properly instruct and supervise prison guards in appropriate procedures for guaranteeing inmate safety and compliance with State and federal law."  Doc. 24 at 20-21.  There is no further indication whether Stolk is sued in his individual or official capacity.

Assuming *arguendo* that Plaintiff's § 1983 claim is asserted against Stolk in both his individual and official capacities, the official-capacity claim fails because Plaintiff has not alleged that Stolk acted under color of state law.[13]  Instead, Plaintiff alleges that Stolk had a "personal responsibility for the physical safety" of Beltran and a "duty to safeguard" Beltran's constitutional rights.  Doc. 24 at 7.  Plaintiff alleges that after the stabbing, Stolk entered Beltran's cell and, with the assistance of other ESP staff members, carried Beltran into a prison corridor.  *Id.* at 16.  Plaintiff never describes the scope of the duty that Stolk owed Beltran or whence that duty arises.  Accordingly, to the extent that Plaintiff intended to state a § 1983 claim against Stolk *in his official capacity*, she has failed to do so, and any such claim is dismissed.

### C.   Moving Defendants Are Entitled to Summary Judgment on Plaintiff's § 1983 Claim Because Plaintiff Has Not Come Forward with Admissible Proof to Support Her Constitutional Violation Theories.

Moving Defendants next contend that Plaintiff has failed to demonstrate an actual connection between their personal conduct and the alleged deprivations of Beltran's constitutional rights to survive dismissal or summary judgment with respect to her § 1983 claims brought against these defendants in their individual capacities.  Doc. 81 at 9.   "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."

---

[13] Plaintiff did provide a list of those Defendants she alleges were acting under "color of law" when Beltran's constitutional rights were violated; Stolk is not on it.  *See id.* at 17.

12

1   *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "In order for a person acting under color of state

2   law to be liable under § 1983 there must be a showing of personal participation in the alleged rights

3   deprivation."  *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell*, 436 U.S.

4   658); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1062 (9th Cir. 2012) (quotation omitted).  A

5   showing of personal participation must be made as to each defendant and a causal connection

6   between each defendant and the complained-of conduct must be shown.  *See Johnson v. Duffy*, 588

7   F.2d 740, 743 (9th Cir. 1978).  "Vague and conclusory allegations of official participation in civil

8   rights violations are not sufficient."  *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266,

9   268 (9th Cir. 1982).[14]

10   Plaintiff's § 1983 claim is premised on the broad allegation that the Defendants' creation and

11   implementations of policies, along with their actions and inactions caused Beltran "to suffer cruel

12   and unusual punishment . . . . deprived [ ] Beltran of his life without due process of law," and

13   resulted in Beltran, "as a member of a racial minority, being treated differently than Caucasian

14   inmates and being double-celled with a member of the Aryan Warriors, thereby denying" him "equal

15   protection of the law because of his race and/or ethnic origin."  Doc. 24 at 22.  Plaintiff responds to

16   this summary judgment challenge by conclusorily stating that:

17
18              the creation of unconstitutional policies that exposed Beltran to
             danger, by consciously and wantonly ignoring repeated, specific
19              warnings that Beltran was in substantial danger of being maimed or
             murdered based on his status as a sex offender and alleged affiliation
             with gangs that were known enemies to other gangs, and by policies
20              and practices that created, condoned, or allowed conditions of
             disparate treatment for minorities and sexual offenders. [And, a]fter
21              the attack on Beltran, prison staff violated Beltran's Eight[h]
             Amendment rights by failing to promptly and reasonably procure
22              medical aid. . . .

23   Doc. 121 at 21.  She dramatically adds that all of the Moving Defendants were "deliberately

24   indifferent to Beltran's health and safety under the Eighth Amendment" because they failed to

25

26      [14] *See also Grundy v. Skolnick*, 2011 WL 1299614, at *8 (D. Nev. Mar. 31, 2011) (Hunt, J.) (applying

27   *Ivey* to Eighth Amendment claim); *Jackson v. Halberrfield*, 2011 WL 310528, at *5 (D. Nev. 2011) (Reed, J.)
   (applying *Ivey* to allegations of liberty interest violation by correctional officers); *Collup v. City of Reno ex rel*

28   *Reno Police Department*, 2009 WL 2382681, at *1 (D. Nev. July 31, 2009) (Sandoval, J.) (applying *Ivey* and
   finding that plaintiff's amended complaint was insufficiently pled).

1    protect Beltran from Potter's violent attack, ignoring 2005 warnings by Potter that he would attack a

2    cellmate if he was housed with one and the inevitability that placing Beltran—a sex offender—with

3    a gang member with Potter's predilections was "like a perverse human bloodsport" that

4    "predictably" resulted in Beltran's death.  Doc. 121 at 14-16, 20-23.

5            As Plaintiff has the burden of proving all of these facts and theories at trial, the Moving

6    Defendants' burden on summary judgment was merely to point to the absence of evidence; the

7    burden then shifted to Romero to specifically identify the admissible evidence that supports these

8    claims and theories.  *See Celotex*, 477 U.S. at 323-24; *Matsushita*, 475 U.S. at 587; *Arnold v.*

9    *International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) ("In a section 1983

10   cause of action the plaintiff must show that the defendants have deprived him of a right.").  In the

11   face of Moving Defendants' charge that there is no evidence that they personally participated in the

12   policies, procedures, and other activities alleged in the complaint, Plaintiff has not offered evidence

13   competent for consideration.

14

15                   **1.    *No Evidentiary Support for the Policies-and-Procedures Theory Against***
                            ***Supervisors Whorton and McDaniel***

16           There is no respondeat superior liability under § 1983.  *See Johnson*, 588 F.2d at 743-44.  A

17   civil-rights plaintiff must prove that "each Government-official defendant, through the official's own

18   individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  To

19   prove a §1983 deliberate-indifference claim against a supervisor, a plaintiff must show "the

20   supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates,"

21   *Starr*, 652 F.3d at 1207 (finding supervisory liability for Eighth Amendment violations where

22   Sheriff had specific notice of constitutional violations, and received numerous reports documenting

23   jail's unsafe conditions), or that "supervisory officials implement[ed] a policy so deficient that the

24   policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

25   violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quotation omitted).

26           Plaintiff offers no evidence to link her policies-and-procedures theory to defendant Whorton.

27   The closest she gets are sweeping, conclusory statements (without citing to any evidence

28   whatsoever) that "NDOC prison officials" including "the Director of NDOC" knew that "their

                                                            14

1   failure to appropriately classify inmates for double celling assignments amounted to deliberate

2   indifference to" Beltran's safety, and "but for" these policies, Beltran would not have died.  Doc.

3   121 at 20-22.  These bald arguments are insufficient to prevent summary judgment on the policies-

4   and-procedures claim against Whorton.

5          Plaintiff makes a greater effort with respect to the same claim against McDaniel, but that, too

6   falls short.  Plaintiff notes briefly that the prison adopted a policy regarding cell assignments and

7   offers a document entitled "Institutional Procedure 5.13" that appears to contain McDaniel's

8   signature.  Docs. 121 at 4; 104-1 at 47-51.  This document is not accompanied by any affidavit

9   authenticating it as a business record of the prison or explaining its use or whether it was in effect at

10  the time of Beltran's death, so its relevance and authenticity have not been established.  *See Zhang v.*

11  *American Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (upholding trial court's decision

12  to exclude evidence of company policy, when "there was no competent evidence that [the policy]

13  had in fact been distributed to the managers and employees"); *Ilae v. Tenn*, 2013 WL 4499386, at *3

14  (D. Haw. Aug. 20, 2013) (on motion to dismiss § 1983 claim, declining to consider municipal

15  county policy where there was no indication that it represented the policy in effect at the time

16  incident occurred).  Even if this Court were to consider this document, Plaintiff does not

17  explain—and does not offer evidence demonstrating—any connection between this policy and

18  Beltran's death or how this policy "itself is a repudiation of constitutional rights."  *Hansen*, 885 F.2d

19  at 646.  Indeed, the policy and procedures described in this document appear to *allow* single-cell

20  assignments under specified, limited circumstances.  Doc. 104-1 at 51.

21         The scant admissible evidence Plaintiff offers undermines her claim that Whorton and

22  McDaniel had anything to do with the cell-assignment policies and procedures that resulted in

23  Beltran's assignment to a cell with Potter.  Plaintiff attached as an exhibit to her oppositions the

24  collective verified interrogatory responses of Defendants Chambliss, Drain, Landon, Otero, and

25  Whorton.  Doc. 104-2 at 1-46.  These defendants answered Plaintiff's request to "identify all persons

26  who participated in or [were responsible] for the cell assignments for Beltran and Potter" by listing

27  several persons—none of whom are named defendants in this case.  Doc. 104-2 at 5, 14, 23, 32, and

28  41 (emphasis added).  As these verified interrogatory responses are evidence that Whorton and

1    McDaniel were not responsible for Beltran's cell assignment, and Plaintiff has offered no admissible

2    evidence to contradict that evidence or create a genuine issue of material fact about Whorton's and

3    McDaniel's personal participation in those policies and procedures, summary judgment on this claim

4    is warranted.

5
6                **2.      *No Evidentiary Support for the Deliberate-Indifference Theory Against Any*
                           *Moving Defendant***

7          Similar proof problems prove fatal to Plaintiff's theories that the Moving Defendants showed

8    deliberate indifference to Beltran's safety through their cell-search, cell-assignment, and cuffing

9    policies and their response to Beltran's post-attack medical needs. *See* Doc. 24 at 3-4, 17-22.  In

10   general, the "deliberate indifference" inquiry requires a court to first determine whether the

11   deprivation was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "Seriousness"

12   hinges on whether the prisoner was deprived of the "minimal civilized measure of life's necessities,"

13   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quotation omitted), by showing that the defendants knew

14   of but disregarded an excessive risk to the plaintiff's safety. *Tochugi v. Chung*, 391 F.3d 1051, 1057

15   (9th Cir. 2004) (citation omitted).  This standard goes beyond gross negligence. *Wood v.*

16   *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  An "error in good faith" will not trigger § 1983

17   liability for Eighth Amendment violations, "whether that conduct occurs in connection with

18   establishing conditions of confinement, supplying medical needs, or restoring official control over a

19   tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Even where officials "actually

20   knew of a substantial risk of inmate health or safety [they] may be found free from liability if they

21   responded reasonably to the risk . . . ." *Farmer*, 511 U.S. at 844.

22         Plaintiff makes the sweeping argument that the Moving Defendants "received repeated,

23   specific warnings of the danger to Beltran that they wantonly and deliberately disregarded," and they

24   "systematic[ally]" failed "to protect inmates designated as sexual offenders." Doc. 121 at 15-16, 22-

25   23.  The evidence that Plaintiff offers to establish these theories is categorically inadmissible and

26
27
28

1    cannot defeat summary judgment.[15]

2                              *a.      Prison Files*

3          In an effort to demonstrate personal involvement by all of these Moving Defendants, Plaintiff

4    avers that Potter wrote various "kites" (handwritten notes) to defendants Drain and Chambliss in

5    March 2005 when Potter's preferred cellmate was leaving for a parole revocation hearing, warning

6    that Potter would take violent action against any new cellmate.  Doc. 121 at 5-6.  Plaintiff contends

7    that all of this discussion and process is memorialized in prison files, which she offers in an 841-

8    page document dump on a single CD[16]—a "'veritable catapult to hurl a jumbled mass of

9    information' at defendants and this court in the hope of avoiding summary judgment."[17]  Plaintiff's

10   "Uncontested Material Facts Pursuant to Local Rule 56-1" and "Brief Fact Recap" (which comes

---

[15] Though she submitted 18 exhibits with her oppositions, Plaintiff only references 9 of these exhibits in her brief (exhibits 4, 9, 10, 12, 14-18).  The Court does not consider the unreferenced exhibits in ruling on this motion.  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("We hold that the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers.  Though the court has discretion in appropriate circumstances to consider other materials, it need not do so.  The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Plaintiff also obliquely references—but does not cite to—testimony allegedly given at Potter's trial as support for her claim that medical care was delayed or denied Beltran.  *See* Doc. 121 at 17 ("During Potter's trial the nurse testified that when the nursing staff arrived they did not have the proper equipment and had to go back and retrieve a Gurney and other medical items.  The video trial also states that no medical doctor was on site.  There was substantial delay in rendering life saving medical treatment due to the failure to assist and remove Beltran timely from the cell even though Potter was handcuffed and no longer a threat.  There was delay in personnel arriving and further delay in not having the proper equipment on arrival and not having a medical doctor on location to render treatment.").  Plaintiff attaches as Exhibit 5 unauthenticated disks that purportedly contain the videotaped trial of Potter.  *See* Docs. 7; 121-1 at 21-25.

But simply attaching these videos and making generalized references to the content of the testimony is an inadequate means of opposing summary judgment.  "It is not the role of the Court to parse the parties' exhibits to construct the facts.  Judges are not 'like pigs, hunting for truffles buried in briefs.'"  *Sokoya v. Downey*, 2009 WL 773523 (C.D. Ill. Mar. 20, 2009) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  "Nor are they archaeologists searching for treasure."  *Id.* (quoting *Jeralds ex rel. Jeralds v. Astrue*, 2010 WL 4942161, at *7 (N.D. Ill. Dec. 8, 2010)) (citing *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir.1999)).  Put simply, the Court is not obligated to "paw over files without the assistance from the parties" in order to make a party's claim.  *See Orr*, 285 F.3d at 774-75 (quotation omitted).

[16] The label of the CD purports to identify these documents as part of a "Supplement to Defendants' Rule 26-1 Initial Disclosures, ROMERO 001-841."

[17] *Sokoya v. Downey*, 2009 WL 773523 (C.D. Ill. Mar. 20, 2009) (citing *Greer v. Board of Education*, 267 F.3d 723, 727 (7th Cir. 2001)).  *See* Doc. 104-1 at 20; Doc. 121 at 5-7.

17

two sections after the Uncontested Material Facts Pursuant to Local Rule 56-1) cites to various documents within these 841 pages including documents that purport to be disciplinary forms, incident reports, a 2008 letter from Potter to Lt. Governor Krolicki, and a 2008 anonymous letter to Beltran's mother from "a concerned citizen." Doc. 121 at 5-11.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr*, 285 F.3d at 773. At the summary judgment stage, evidence must be authenticated before it is considered. *Id.* at 774; *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."). Not only did Plaintiff fail to take any step to authenticate these 841 pages of documents (with, for example, an affidavit from the custodian of records at the prison or the deposition testimony of a prison representative or any of the Moving Defendants whose names are contained in these documents),[18] but Plaintiff's counsel conceded the inadmissibility of all but one document at the October 1, 2013, hearing on this

---

[18] That the 841 pages contained on the CD deposited with this Court as Exhibit 4 are a Supplement to Defendants' Rule 26 Initial Disclosures and were represented in the transmittal sheet as documents provided by Nevada Department of Corrections does not alone allow their consideration on summary judgment, as "The fact that [a] document was produced in discovery does not, like an evidentiary Philosopher's Stone transmute it into an admissible self-authenticating document." *United States v. Novelli*, 381 F. Supp. 2d 1125, 1130 (C.D. Cal. 2005).

Nor is it significant that some of these documents are duplicated in the documents that Moving Defendants offer as support for their motion. To introduce these excerpts, Moving Defendants proffer the affidavit of Debra Brooks, who affirms that she is the Associate Warden at Ely State Prison, and "[a]ttached to this motion are true and correct copies of documents from Beltran, Anthony # 89304, and Potter, Douglas # 66313's I-file, and NOTICE, and investigation reports regarding the incident with supporting documentation." Doc. 81-1 at 2. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quotation omitted). Brooks' affidavit fails to properly authenticate any of its attached exhibits. She does not specify what "I-file" or "NOTICE" mean and leaves the Court to guess whether the "incident" in question refers to Potter's stabbing of Beltran on December 28, 2006. Even assuming clarification of these semantic ambiguities, Brooks never states that she has personal knowledge of any of the documents and does not certify that they are true and correct, that they reflect an ordinary business activity, or that they are certified public records that Brooks' position gives her the capacity to authenticate. Brooks does not even affirm that the documents attached are "ordinarily kept" in Potter and Beltran's files. In sum, Brooks' Affidavit is of no value in authenticating any of these documents.

motion.[19]  Thus, these documents in Exhibit 4 that Plaintiff heavily relies upon as evidentiary support cannot be considered when determining whether Plaintiff has offered evidence to create a genuine issue of material fact of the named Moving Defendants' participation in the actions that allegedly resulted in Beltran's death.

### b.    Vazquez Report

Exhibit 12 purports to be an expert report from Daniel B. Vazquez as support for Plaintiff's theory that "NDOC were [sic] deliberately indifferent due to the neglect of the administration and staff in their failure to protect the safety of inmates under their responsibility."  Doc. 121 at 11.  Though not referenced in the body of Plaintiff's argument in opposition, it appears that it is the Vazquez report that Plaintiff relies on for her theories that Warden McDaniel was aware of Potter's 2005 threats of violence to any cellmate and that the entire NDOC staff knew that Potter's gang affiliation plus the sexual-offender nature of Beltran's conviction put Beltran at risk of death.  *Id*.  Vazquez's opinion is heavily steeped in what he opines NDOC knew and "NDOC staff believed" with respect to Potter's and Beltran's affiliations with California gangs and their rivalries.  Doc. 104-1 at 66-74; 121 at 11.[20]

In the Ninth Circuit, "[e]xpert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not."  *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985).  In short, for an expert opinion to be considered on summary judgment, it must be contained in a proper affidavit; courts in the Ninth Circuit "have routinely held that unsworn expert reports are inadmissible."  *Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011); *see also Ridgel v. United States*, 2013 WL 2237884, at *2-*3 (C.D. Cal. May 21, 2013); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210-11 (D. Nev. 2008); *King Tuna, Inc. v.*

---

[19] Counsel argued without authoritative support that Vazquez's expert report is self-authenticating.

[20] The Court does not herein decide the ultimate admissibility of expert opinion testimony by Vazquez under Fed. R. Evid. 702-705; this discussion is limited to Plaintiff's failure to present these opinions in a manner that allows their consideration on summary judgment.

1   *Anova Food, Inc.*, 2009 WL 650732, at *1 (C.D. Cal. Mar. 10, 2009) ("It is well-settled that under

2   Fed. R. Civ. P. 56(e), unsworn expert reports are not admissible to support or oppose summary

3   judgment" and that "to be competent summary judgment evidence, an expert report must be sworn

4   to or otherwise verified, usually by a deposition or affidavit.").  The Vazquez opinions are contained

5   in an unsworn expert report unaccompanied by any affidavit or declaration.  Doc. 104-1 at 66-74.

6   The unsworn report cannot be considered as competent summary judgment evidence.

7                    *c.      The Sellers Criminal Indictment*

8            Plaintiff also argues that a paragraph from (an uncertified copy of) the Superseding Criminal

9   Indictment of Ronald "Joey" Sellers and several other NDOC prison inmates charging them with a

10   host of crimes including murder of Beltran, Doc. 104-2 at 66, proves that "the conduct of prison

11   officials, guards, and staff was both wanton and deliberately indifferent to Beltan's safety and

12   constitutional rights."  Doc. 121 at 28-29.  She characterizes the allegations in the indictment as

13   "generalized but lurid allegations of conspiracy against unnamed persons in the employ of NDOC."

14   Doc. 121 at 12, 28 (quoting Doc. 104-2: "The Aryan Warriors rely on the active assistance or willful

15   neglect of prison guards and other staff in the Nevada prison system.  The Aryan Warriors corrupt

16   guards and prison staff through bribery, including payments of both money and drugs. . . .").

17   Romero originally stated in her opposition brief that, "[i]n light of these allegations, summary

18   judgment cannot be granted until after the Joey Sellers' trial and the information is made available to

19   plaintiff[]."  Doc. 104 at 27.

20            Sellers pled in 2011 and was sentenced in January 2012.  2:07-cr-145-KJD-PAL. Plaintiff

21   has made no effort to supplement the summary judgment record regarding these "generalized but

22   lurid allegations" after that.  Doc. 121 at 12, 28.  These generalized references to "prison guards and

23   other staff in the Nevada prison system" in this uncertified indictment are far too vague to create

24   genuine issues of fact as to the conduct alleged in the instant action against the named defendants;

25   and indictments are simply not competent evidence on summary judgment.  *See e.g. Scholes v.*

26   *African Enterprise, Inc*., 854 F. Supp. 1315, 1324 (N.D. Ill. 1994) (refusing to consider indictment

27   as evidence on summary judgment because an indictment is "conclusory, contains only hearsay and

28   is of no probative value.").

1

### d.      The FBI 302 Files

2          Exhibits 16 and 17 are comprised of pages purportedly from the FBI files regarding

3    interviews with inmate Guy Almony and Potter, both of which purport to detail the process by which

4    the Aryan Warriors discussed Potter's "hit" on Beltran.  Docs. 104-2 at 75-76; 121-1 at 2-8.  No

5    effort has been made to authenticate Exhibit 16, which apparently consists of just three pages of the

6    report of Almony's interview intermixed with transcript pages 25, 8, 9, and 45 of unidentified

7    transcripts.[21]  Doc. 104-2 at 74-82.  Counsel for Plaintiff offers an "Errata" that attaches the Potter

8    FBI 302 file, which counsel claims was received pursuant to FOIA requests.  Doc. 123 at 2.

9          With no attempt to authenticate or identify the contents of Exhibit 16, it is not admissible on

10   summary judgment.  The contents of both of these exhibits is inadmissible for the independent

11   reason that they are pure hearsay recitations of unsworn statements made by Almony and Potter to

12   FBI investigators.  Plaintiff offers the contents of these documents for the truth of their assertions

13   that "The NDOC staff told the Aryan Warriors they were going to be moving a 'repeat sex offender

14   into one of their cells,'" creating "a foreseeable certainty that Mr. Beltran would be attacked."  Doc.

15   121 at 26 (quoting Doc. 104-2 at 78).  This double-hearsay problem is not eliminated merely by the

16   fact that these unsworn statements are contained in FBI reports.  *U.S. v. Mackey*, 117 F.3d 24, 28-29

17   (1st Cir. 1997) ("In line with the advisory committee note to Rule 803(8), decisions in this and other

18   circuits squarely hold that hearsay statements by third persons such as Munichiello are not

19   admissible under this exception merely because they appear within public records.  This is the same

20   'hearsay within hearsay' problem that is familiar in many contexts.") (internal citations omitted).

21   The reports even note that they do not contain the "recommendations nor conclusions of the FBI";

22   instead they are essentially informal transcripts of Almony and Potter's unsworn statements to the

23   FBI.  *See e.g. United States v. Ortiz*, 125 F.3d 630, 632 (8th Cir. 1997) (reports of investigative

24   agency are not admissible when "essentially a transcript of what the informant told the . . . agent.  It

25

26          [21] "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it
27   identifies the names of the deponent and the action and includes the reporter's certification that the deposition
     is a true record of the testimony of the deponent."  *Orr*, 285 F.3d at 774; *Truseal Technologies, Inc. v. Beijing
28   Huali Architecture Decoration Co., Ltd.*, 2010 WL 3703792, at *2-*3 (D. Nev. Sept. 10, 2010) (citing *Orr* and
     finding that attorney's affidavit was insufficient).

does not present 'factual findings,' which is what Rule 803(8)(C) makes admissible."); *Novelli*, 381 F. Supp. 2d at 1128-29 (finding that contents of IRS investigatory file were not properly authenticated). Thus, Exhibits 16 and 17 cannot be considered as evidence that creates genuine issues of fact to prevent summary judgment.

### e. Exhibit 18

Plaintiff's final exhibit—Exhibit 18—is comprised of a handwritten letter purportedly from Potter to "Natalie" dated January 26, 2010, Doc. 121-1 at 10-20; a "Supplement [sic] Report" from the White Pine County Sheriff's Department that describes several items submitted in connection with the investigation of the stabbing incident, *id.* at 21; and the apparent transcription of a December 28, 2006, unsworn interview of "inmate Allen Gochenour" by "Supervisor Investigator Pam Del Porto." *Id.* at 22-33.[22] None of these exhibits is properly authenticated, their origin is unknown, they all contain unsworn statements about the Beltran situation, and Plaintiff purports to utilize the Potter letter to establish the truth of the theories contained therein. Doc. 121 at 10 ("The letter describes that NDOC defendants were complicit in allowing a inmate who was being paroled to pass the typewriter to members of the Aryan Warriors."). Thus, they cannot be considered on summary judgment.

As Plaintiff has offered no admissible evidence that supports her cruel-and-unusual-punishment and due process theories, summary judgment on her § 1983 claim in this regard is now required.[23]

### 3.   *Plaintiff Identifies No Admissible Evidence to Support an Equal Protection Claim Based on Racial Discrimination.*

Plaintiff's equal protection theory finds even less of a toehold in the evidentiary record and the law. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose

---

[22] Plaintiff references only the "Dear Natalie" letter in her opposition. *See* Doc. 121 at 10.

[23] Moving Defendants also seek summary judgment on Plaintiff's request for punitive damages, which Romero requests "pursuant to 42 U.S.C. [§]1983." Docs. 24 at 25; 81 at 22. The Court's grant of summary judgment on the § 1983 claims includes liability and any and all damages, thereby mooting the motion in this regard.

1  to discriminate against the plaintiff based upon membership in a protected class." *Barren v.*

2  *Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Lee v. City of Los Angeles*, 250 F.3d 668, 686

3  (9th Cir. 2001).   On summary judgment, a plaintiff "must produce evidence sufficient to permit a

4  reasonable trier of fact to find by a preponderance of the evidence that the challenged conduct was

5  motivated by discriminatory intent." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003)

6  (quotation omitted).

7          Although her amended complaint contains buzzphrases like "intentional discrimination of

8  inmates of color" and claims Beltran "was a racial minority" celled "with an Aryan Warrior," these

9  concepts do not play into the liability theories identified in Plaintiff's response to the motion for

10  summary judgment.  Indeed, the only classifications that Plaintiff identifies as problematic were the

11  double-bunking of Beltran who "NDOC staff believed" was affiliated with the "Socialist White

12  People's Party" with Potter, an alleged member of the "Aryan Warriors;" and putting Beltran, an

13  adjudicated sex offender, with an Aryan Warrior when "it is common knowledge within the prison

14  environment that any inmates known to have been convicted of sexual offenses will be assaulted and

15  will be killed by gang members."  Doc. 121 at 7, 11.  These classifications, however, do not

16  implicate equal protection, and Plaintiff does not even suggest how they might. The only race-

17  related evidence even offered by Plaintiff is Romero's own declaration that Beltran "is of Native

18  American and Hispanic descent."  Doc. 104-1 at 27, ¶ 4.  But Plaintiff does not even reference this

19  declaration in her briefs, let alone explain how this evidence has any relevance to her equal

20  protection claim. *See supra* note 15 (citing authority for the proposition that the Court need not

21  consider evidence proffered but not explained on summary judgment).

22          In *Ashcroft v. Iqbal*, the Supreme Court held that similar "bare assertions" were insufficient

23  to "nudge[] claims of in invidious discrimination across the line from conceivable to plausible" and

24  survive the more permissive dismissal standard.  556 U.S. 662, 681 (2009) (internal citations and

25  quotations omitted).  Romero's unconstitutional discrimination claim is similarly deficient both in

26  pleading and proof.   With zero evidence that the challenged conduct was motivated by

27  constitutionally actionable discriminatory intent, Romero cannot sustain this § 1983 claim on an

28  equal protection theory either.  Accordingly, summary judgment must be entered on this entire claim

23

as alleged against the Moving Defendants.

**V.     Motion for Summary Judgment on Claim # 2 - Wrongful Death[24]**

Romero has sued "all Defendants" for wrongful death under Nevada State law.  Doc. 24 at 23.  Moving Defendants argue that there was no duty under Nevada state law to protect Beltran from Potter's violent act because that harm was unforeseeable and, regardless, they enjoy qualified immunity for this claim.  Docs. 81 at 22-23; 111 at 11.  Plaintiff contends that Beltran's death was foreseeable because Beltran was a sex offender and the prison authorities knew that the Aryan Warriors routinely targeted such individuals.  Doc. 121 at 26.  Genuine issues of material fact regarding the foreseeability of Potter's actions preclude summary judgment on this claim, and Moving Defendants have not sustained their burden of proving  their qualified immunity.

**A.     Genuine Issues of Material Fact Remain.**

Under Nevada law, proof of negligence requires the plaintiff to allege that the defendant (1) had a duty to exercise due care towards the plaintiff; (2) breached the duty; (3) the breach was an actual and (4) proximate cause of the plaintiff's injury; and (5) the plaintiff suffered damages.  *See Perez v. Las Vegas Medical Center*, 805 P.2d 589, 590-91 (1991).  "With respect to the duty of prison officials to protect inmates from attacks by other inmates . . . the duty [is] one of reasonable care to prevent intentional harm or to avoid an unreasonable risk of harm, when such harm is foreseeable."  *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1059 (Nev. 2007) (noting that prison officials were not liable for attack when inmate did not inform prison officials of fear of the attack, and officials were not otherwise "on notice" that the attack might occur).  "Negligence is never presumed but must be established by substantial evidence."  *Eggers v. Harrah's Club, Inc.*, 476 P.2d 948, 950 (Nev. 1970).  Nevertheless, Nevada courts are "reluctant to affirm summary judgment in negligence cases because, generally, the question of whether a defendant was negligent in a particular situation is a question of fact for the jury to resolve."  *Butler*, 168 P.3d 1063 (citing, *e.g.*, *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001)).

---

[24] Plaintiff does not specify what law her claims for negligent training, supervision, and retention (Count 3) or vicarious liability (Count 4) are founded upon, but Moving Defendants analyze their summary judgment under state law.

Plaintiff's Complaint alleges that Defendants "purposefully and knowingly" celled Beltran with Potter, thereby neglecting a substantial risk that Potter would act violently towards Beltran. Doc. 24 at 23.  Although Moving Defendants argue that Plaintiff has failed to produce competent summary judgment evidence showing that no disputed issue of material fact exists as to the foreseeabilty of the injuries that Potter sustained, a question of fact exists as to whether Moving Defendants were "on notice" that Potter's gang affiliation, Beltran's own gang-related classification, and Beltran's sexual assault conviction, and Potter's history of violence against other inmates—four facts that Moving Defendants do not contest—made it foreseeable that celling these inmates together put Beltran in unreasonable risk of harm.

### B.   Qualified Immunity Defense Not Established.

Moving Defendants contend that even if Plaintiff can prove this claim, they[25] are entitled to qualified immunity from liability under Nevada law.  Doc. 81 at 25.  Moving Defendants admittedly offer no admissible evidence in support of their affirmative defense and therefore have not carried their burden on summary judgment.[26]

### 1.   *Stolk, Otero, Drain, Chambliss, and Landon*

A government employee enjoys qualified immunity from claims "[b]ased upon the exercise or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused."  NEV. REV. STAT. ANN. § 41.032(2).  "[T]o fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy."  *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007) (adopting test under the Federal Tort Claims Act).  Covered actions can occur "at all levels of government, including frequent or routine decisions . . . if the decisions require analysis of government policy concerns."  *Id.*  This test is not a "bright line" rule, but must be assessed on its facts.  *See id.*  "Qualified immunity is an affirmative defense and

---

[25] Moving Defendants do not distinguish between supervisors and non-supervisors for this claim.

[26] At oral argument Defense counsel admitted that she lacked admissible evidence to support this defense.

1   the burden of proving the defense lies with the official asserting it." *Houghton v. South*, 965 F.2d

2   1532, 1536 (9th Cir. 1992).  When the defendant moves for summary judgment on a qualified

3   immunity defense, "it must come forward with evidence which would entitle it to a directed verdict

4   if the evidence went uncontroverted at trial." *Id.* (quoting *International Shortstop, Inc. v. Rally's,*

5   *Inc.*, 939 F.2d 1257, 164-65 (5th Cir. 1991).  The burden shifts to the non-movant only "after the

6   movant has satisfied its burden of demonstrating there is no genuine issue of material fact." *Id.* at

7   1536-37 (quoting *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.

8   1991)).

9           Although it is their burden to establish that immunity attaches, these employee defendants

10  have submitted no admissible evidence to support their contention that the actions of classifying,

11  celling, and escorting Beltran were manifestations of policy.  As these employee defendants have not

12  offered admissible evidence to prove the applicability of their affirmative defense, they have not

13  sustained their burden and summary judgment on this defense is not available.  *C.A.R.*

14  *Transportation*, 213 F.3d at 480; *Houghton*, 965 F.2d at 1537 (summary judgment on immunity

15  defense not available where defendant did not meet his initial burden).

16          **2.      *Whorton, McDaniel, NDOC, and the State of Nevada***

17          Moving Defendants argue that Plaintiff's complaint leaves no question that Whorton and

18  McDaniel were engaged in policy-making functions, thus they are entitled to immunity under

19  Nevada law as "to all NDOC policies and procedures."  Doc. 81 at 25.[27]  NEV. REV. STAT. ANN. §

20  41.032(2) has been interpreted not to immunize actions taken in "bad faith," which "involves an

21  implemented attitude that completely transcends the circumference of authority granted the

22  individual or entity." *Falline v. GNLV Corp.*, 823 P.2d 888, 892 n.3 (Nev. 1991).  Bad faith is

23  distinguishable from "abuse of discretion," which involves "an application of unreasonable

24  judgment to a decision that is within the actor's rightful prerogatives." *Id.*; *Davis v. City of Las*

25  *Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007).

26

27

28          ───────────────────
            [27] Moving Defendants fail to indicate how NDOC or the State of Nevada are entitled to this immunity.

Plaintiff alleges that the decision to cell Potter and Beltran was motivated in part by animus towards Beltran's race and that Defendants manifested "deliberate indifference . . . to the ramifications of their disparate treatment of inmates of different races." Doc. 24 at 4. Although the allegation is flimsy, Moving Defendants offer no evidence to refute it, nor have they provided any evidence to immunize NDOC or the State of Nevada when it was their burden on summary judgment to do so. *Houghton*, 965 F.2d at 1537. As Moving Defendants have not carried their burden of establishing this defense on summary judgment, the motion in this regard must be denied.

## VI. Motion for Summary Judgment on Claim # 3 - Negligent Training, Supervision, and Retention

Moving Defendants also move for summary judgment on Plaintiff's claim that the NDOC failed to train Landon, Otero, Drain, and Chambliss on control of violent inmates, double celling, and handcuffing double celled inmates. Doc. 81 at 24. Moving Defendants contend that none of them are alleged to have been responsible for these actions and that only Howes, who did not join in this motion, was responsible for cuffing Beltran prior to Potter's attack. *See id.* Plaintiff has not offered any admissible evidence to support this claim.

Nevada recognizes the tort of negligent training, supervision, and retention. *See Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). "As is the case in hiring an employee, the employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for the positions." *Id.*; *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1157 (D. Nev. 2005) (citing *Burnett v. C.B.A. Security Service*, 820 P.2d 750, 752 (1991)). Courts consider whether antecedent circumstances would "give the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities." *Hall*, 930 P.2d at 99 (quotation omitted); *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) ("Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else."). "Because the question of whether reasonable care was exercised almost always involves factual inquiries, it is a matter that must generally be decided by a

27

jury." *Butler*, 168 P.3d at 1065. However, in order to prevail on a negligent training or supervision claim, the plaintiff must offer evidence that the employer violated its duty. *Colquhoun v. BHC Montevista Hospital*, Inc., 2010 WL 2346607, at *3 (D. Nev. June 9, 2010) (citing, *e.g.*, *Burnett*). Nevada law does not permit the inference that an employer was negligent in training or supervising simply because the Defendant's employees acted in a discriminatory manner; "the fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision." *Id.* Plaintiff has neither pled nor offered a scintilla of evidence to suggest that the Moving Defendants failed to train, hire, or supervise any employee or that such negligence contributed to Beltran's death. Summary judgment on this claim is required.

**VII.   Claim 4 - Liability of the State of Nevada**

Romero also alleges that the State of Nevada is liable for the negligent acts of "Defendants McDaniel, Whorton, Howes, Landon, Otero, [and] Drain." Doc. 24 at 25. Moving Defendants' Motion for Summary Judgment does not articulate a specific reason why the State of Nevada should not be held vicariously liable as Plaintiff alleges. As with discussion of Plaintiff's § 1983 Equal Protection claims, Moving Defendants bear the burden of informing the Court of the basis for their motion; they have failed to do so and summary judgment is not warranted in this regard.

**VIII.   Conclusion**

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

**It is ORDERED** that Defendants' Motion to Extend Time to respond to Plaintiff's Motion to Reopen Discovery **[Doc. 136]** is **GRANTED**;

**It is further ORDERED** that Plaintiff's Motion to Reopen Discovery **[Doc. 134]** is **DENIED;**

**It is ORDERED, ADJUDGED AND DECREED** that Moving Defendants' Motion for Summary Judgment **[Doc. 81**] is **GRANTED** in part and **DENIED** in part as follows:

1.   All claims against the Doe and Roe Defendants are dismissed without prejudice;

2.   It is **GRANTED** as to Romero's § 1983 claim on behalf of Anthony, Britnie, and Christian Beltran;

3.     It is **GRANTED** as to all remaining aspects of Romero's § 1983 claim against the Moving Defendants;

4.     It is **GRANTED** as to Romero's claim for negligent training, supervision, and retention against the Moving Defendants;

5.     It is **DENIED** as to Romero's claims for wrongful death and vicarious liability against the State of Nevada.

**It is FURTHER ORDERED** that Defendant Howes shall have 21 days after the date of this Order to file a fully supported motion for summary judgment. In the event that Howes files such a motion, Romero shall then have 21 days to respond, and Howes shall have 10 days to file any reply.

DATED November 27, 2013.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

29