UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Helen Jane Romero, et al., <br><br> Plaintiffs, <br><br> v. <br> Nevada Department of Corrections, et al., <br><br> Defendants | Case No.: 2:08-cv-808-JAD-VCF <br><br> **Order Granting Defendant Howes's Motion for Summary Judgment [Doc. 145] and Remanding Case** |

    This §1983 and wrongful-death case arises from the violent death of prisoner Anthony Beltran, who was fatally shanked by his cellmate. Beltran's mother, on behalf of his estate and children, sued the State of Nevada, the Nevada Department of Corrections, prison administration, guards, and caseworkers. All defendants except corrections officer Trent Howes (due to apparent confusion over who represented Howes) obtained summary judgment on everything but the wrongful death claim. Doc. 144. Howes now moves for summary judgment on the claims against him based on a lack of admissible evidence. I find that plaintiff has failed to sustain her burden with admissible evidence, and I grant Howes's motion. And because the entry of summary judgment on the claims against Howes leaves only a state-law claim, I also exercise my discretion to decline to retain jurisdiction over the remainder of this case and remand the lone remaining wrongful death claim back to the Eighth Judicial District Court.

**Background**

    Anthony G. Beltran was fatally stabbed by his cellmate Douglas Potter on December 28, 2006, while the two men were inmates at the Ely State Prison ("ESP"), operated by the Nevada Department of Corrections ("NDOC"). Beltran's mother Helen Romero—as administratrix of Beltran's estate and guardian ad litem of his children—sued NDOC; NDOC director Glenn Whorton; warden E.K. McDaniel; corrections officers Trent Howes, Michael

Stolk, Theresa Landon, and Robert Otero; and caseworkers Robert Chambliss and Mark Drain. Doc. 24. Romero generally alleges that while Beltran was having his handcuffs fastened by guard Howes through the food slot in the cell door prior to being led to the shower, Potter attacked Beltran with a shank fashioned from a metal piece of a typewriter—all to gain greater status in the Aryan Warriors organization. *See id.* Romero theorizes that Beltran's death "was made possible" by NDOC's policies and practices regarding cellmate selections and protecting prisoners from other violent inmates. *Id.* at 3-4. She contends that the defendants, including Howes, acted with deliberate indifference to Beltran's safety and constitutional rights and celled Beltran with Potter despite knowledge of Potter's Aryan Warriors affiliation and threats of violence to any cell mate. *See id.* She asserts two claims against Howes: a § 1983 claim for violations of Beltran's Eighth and Fourteenth Amendment rights and a wrongful death claim. *Id*. at 17-25.

The poorly utilized discovery period in this case closed four years ago. *See* Doc. 144 at 6. Much of this six-year-old case has been whittled away on summary judgment. All of Romero's claims against the doe and roe defendants have been dismissed, along with her negligent hiring, training, and supervision claim. *Id.* at 5, 11, 28. All other defendants have also obtained summary judgment in their favor on Romero's § 1983 claim. *Id*. Thus, as I undertake to evaluate Howes's summary-judgment motion,[1] it is with this backdrop of still-viable claims: a § 1983 claim against Howes and a wrongful death claim against all defendants.

**Discussion**

**A.   Summary Judgment Standard and Burdens**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The burdens on summary judgment are key. A party seeking summary judgment bears the initial burden of informing the Court of those portions of the pleadings and

---

[1] I find this motion appropriate for disposition without oral argument. L.R. 78-2.

discovery that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case. *See Celotex*, 477 U.S. at 323-24. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict of the evidence went uncontroverted at trial." *C.A.R. Transportation Brokerage Co. v. Darden Resorts, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

After the movant has met its Rule 56(c) burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Although "[t]he evidence of [non-movant] is to be believed, and all justifiable inferences are to be drawn in [her] favor," *id.* at 587, she "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," and evidence must be authenticated before it can be considered. *Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. "The court shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.  Howes's Motion for Summary Judgment on Claim #1 - Deprivation of Constitutional Rights Under 42 U.S.C. § 1983**

Romero's § 1983 cause of action against Howes is based on three constitutional-violation theories: an Eighth Amendment violation alleging deliberate indifference to Beltran's safety and post-attack medical needs; an Eighth Amendment violation based on policies and actions that caused Beltran to suffer cruel and unusual punishment, and a Fourteenth Amendment equal protection claim alleging that Howes' created and implemented policies and took or failed to take actions that resulted in Beltran's disparate treatment based on race. *See* Doc. 24 at 21-22. Howes argues that plaintiff's § 1983 claim fails because plaintiff has no admissible evidence to support any of her theories. Doc. 145 at 7-10.

>  *1.  Howes is entitled to summary judgment on Romero's § 1983 Eighth Amendment claim because Romero has not offered admissible proof to support her Eighth Amendment-violation theories.*

Civil liability for Eighth Amendment violations lies when a state actor is deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In general, the "deliberate indifference" inquiry requires a court to first determine whether the deprivation was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Seriousness" hinges on whether the prisoner was deprived of the "minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quotation omitted), by showing that the defendants knew of but disregarded an excessive risk to the plaintiff's safety. *Tochugi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). This standard goes beyond gross negligence, *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990), and an "error in good faith" will not trigger § 1983 liability for Eighth Amendment violations, "whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Even where officials "actually

knew of a substantial risk of inmate health or safety [they] may be found free from liability if they responded reasonably to the risk . . . ." *Farmer*, 511 U.S. at 844.

Romero argues that Howes was deliberately indifferent to Beltran's safety and medical needs. She has failed, however, to provide admissible evidence to support either theory.

>    a.   **No admissible evidence of Howes's deliberate indifference to Beltran's safety.**
>
>         i.   **Cell assignment**

Romero's poorly signposted complaint alleges, *inter alia*, that Howes and his co-defendants were "responsible for knowingly and purposefully placing . . . Beltran into a prison cell with Potter; who was known to be a violent member of the racially[] oriented Aryan Warriors gang with an antipathy toward minorities who had specifically threatened the life of any inmate double-celled with him, violence of the exact nature inflicted upon Anthony Beltran." Doc. 23 at 20-21. Howes argues that there is no admissible evidence even suggesting that he had anything to do with cell-assignment decisions, and notes that Romero's extensive allegations in her complaint and the other defendants' interrogatory responses attribute those decisions to others. Doc. 145 at 8-9. Howes also notes that Romero's inability to offer evidence against him stems, in part, from her failure to propound discovery on him. *Id.* at 8. In her summary-judgment response, Romero concedes that Howes had no direct knowledge of Potter's dangerous propensities, Doc. 146 at 11-12, but argues that Howes was responsible for "gathering information" about Beltran and Potter's propensities and possible incompatibility as cell mates; had he done so, Romero argues, Beltran and Potter "would not have been assigned to be double celled with each other." Doc. 146 at 11-12.

The evidence overwhelmingly demonstrates that Howes was not one of the persons responsible for Beltran's cell assignment. Although plaintiff propounded no written discovery on Howes himself, she did serve requests on the other defendants, who uniformly

5

responded that the cell-assignment decisions were made by Unit 5 Case worker, Kay Weiss, Casework Specialist II Michael Oxborrow, Associate Warden of Programs Adam Endel, and Lt. Tony Jones.[2]  Howes is not mentioned in these answers as one of the responsible employees.

Romero attempts to tie Howes to the cellmate-assignment decision through another method: she points to a series of prison policies and procedures that she contends obligated Howes to gather information about a potential cellmate-pairing danger and she argues that, had Howes complied with his obligations under those guidelines, Beltran and Potter would never have been celled together.  Doc. 146 at 11-12.  She relies on three documents that her counsel represents are Ely State Prison polices and procedures.  Docs. 146-17–146-19.  Having previously felt the sting from attempting to support a summary-judgment response with unauthenticated and inadmissible documents,[3] Romero's counsel attempts to authenticate these corrections documents with his own, unsworn declaration that these documents "are official publications of the Nevada Department of Corrections" that are, therefore, "self-authenticating" under FRE 902(5).  Docs. 146-18 at 2; 146-19 at 2.  He's twice wrong: the documents are not self-authenticating, and his unsworn declaration lends these documents no credence.

To be sure, Rule 902 lists official publications among the categories of self-authenticating documents, but it defines official publications to include "a book, pamphlet, or other publication purporting to be issued by a public authority."  Fed. R. Evid. 902(5).  Typically, this provision applies only to "a writing produced in multiple copies for distribution to persons beyond those involved in the creation of a writing" and, where

---

[2] Doc. 145-1 at 4-5 (responses of Defendant Chambliss). Identical interrogatories, and responses, were provided by Defendants Landon (Doc. 145-2 at 4-5); Wharton (Doc. 145-3 at 4-5); Otero (Doc. 145-4 at 4-5); Drain (Doc. 145-5 at 4-5); and McDaniel (Doc. 145-6 at 4-5).  These interrogatory answers are verified and thus properly authenticated for my consideration on summary judgment.

[3] Doc. 144 at 15.  Authentication is an evidentiary prerequisite on summary judgment, *Orr*, 285 F.3d at 773-74, and it requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

1  government documents can be traced to an outside source like a website, they qualify.
2  *United States ex rel. Parikh v. Premera Blue Cross*, 2006 WL 2841998, at *3 (W.D. Wash.
3  Sept. 29, 2006) (quotation omitted); *see also Estate of Gonzales v. Hickman*, 2007 WL
4  3237727, at *2 n.2 (C.D. Cal. May 30, 2007) (finding a Report of the Office of the Inspector
5  General authenticated when the document was available on the agency website).  Plaintiff
6  has failed to provide me with enough information about the source and nature of these
7  documents—particularly the scope and breadth of their distribution, if any—to conclude that
8  these documents qualify as self-authenticating documents under Rule 902(5).
9      And plaintiff has not offered any other basis for authenticating these documents.
10 Despite extensive guidance from the court regarding the method for authenticating the
11 evidence that Romero has now repackaged for her opposition to Howes's instant motion, *see*
12 *generally* Doc. 144, these documents not only remain unauthenticated, but even their
13 relevance is uncertain.  Missing from this submission is any affidavit or sworn statement
14 from the prison's custodian of records who can state, upon personal knowledge that these are
15 true and correct copies of polices and procedures in effect at the time of Beltran's death.  *See*
16 *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (upholding trial
17 court's decision to exclude evidence of company policy, when "there was no competent
18 evidence that [the policy] had in fact been distributed to the managers and employees"); *Ilae*
19 *v. Tenn*, 2013 WL 4499386, at *3 (D. Haw. Aug. 20, 2013) (on motion to dismiss § 1983
20 claim, declining to consider municipal county policy where there was no indication that it
21 represented the policy in effect at the time incident occurred). Although counsel declares that
22 these documents are self-authenticating, "official publications of the Nevada Department of
23 Corrections," Docs. 146-17, -8, and -19 at 2, he does not indicate how he has personal
24 knowledge of this fact, and his declaration is unsworn.
25     Moreover, the contents of the documents themselves call into question their efficacy
26 at the time of the attack.  For example, the attack occurred on December 28, 2006, but
27 Exhibit 18 is dated nearly a year earlier and indicates that it replaced a version of the
28

document that had been in force for less than a year. *See* Doc. 146-18 at 3. The effective date of Institutional Procedure 5.13 that plaintiff offers as Exhibit 19 is closer to the time of the accident—September 1, 2006—but it replaces a version dated just seven months earlier. *See* Doc. 146-19 at 3. The potentially short lifespans of these policies strip these documents of any of indicia of reliability—both for authenticity and relevancy—that I might otherwise presume.

      Romero also points to an expert report from Daniel B. Vasquez, who claims in general terms that NDOC was grossly negligent in celling Beltran and Potter. *See* Doc. 16-16. Howes objects to the Vasquez Affidavit as inadmissible under Rule 26 because it was not disclosed in discovery. Doc. 148 at 3-4. But even if I ignore the failure to disclose this expert report and consider it as competent summary judgment evidence,[4] it does not save this deliberate-indifference-to-safety claim against Howes: Vasquez's affidavit doesn't implicate Howes.[5] It criticizes "Ely SP Classification staff" and the absence of a "decision for further consideration by a classification committee"; there is no evidence (or even a suggestion) that Howes was part of the classification staff or classification committee. Indeed, the other defendants' sworn interrogatory responses exclude Howes's name from the list of any cell-assignment decisionmakers. *See* Docs. 145-1–145-6. I also find it telling that even Vasquez, who purports to offer "expert opinions" about the defendants' "Deliberant [sic] Indifference and Neglect of the Safety and Welfare of Anthony Beltran," Doc. 146-16 at 1, does not fault Howes for any failure to gather information on Potter's dangerous propensities. Thus, I find no evidence to support plaintiff's theory that prison guard Howes had any connection to the decision to house Beltran and Potter together or that he knew of and consciously disregarded an excessive risk to Beltran's safety by celling them together.

---

[4] I rejected this document when Romero originally supplied it in opposition to the other defendants' motion for summary judgment because no attempt had been made to authenticate it. *See* Doc. 144 at 19-20. Romero has added Vasquez's December 2013 sworn declaration that his September 2010 report is "true and correct." Doc. 146-16 at 2.

[5] At most, it refers to Howes as the staff member who "witnessed" the attack. Doc. 146-16 at 7.

### ii. *Restraining Beltran*

Romero also theorizes that Howes was deliberately indifferent to Beltran's safety when he restrained Beltran on December 28, 2006, prior to escorting him to the shower, thus "rendering him unable to protect himself from an attack while locked in a cell with Potter, who was unrestrained, and while Defendants were not in a position to protect, defend, or otherwise assist . . . Beltran in the event of an attack." Doc. 24 at 21. Howes challenges this theory, too, based on a lack of evidence.

A policy of cuffing inmates prior to leading them from their cells is a permissible Eighth Amendment restriction. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *see LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (finding that inmate could remain shackled in the shower when the inmate poses a danger to others). I have found no case in which the *sequence* of cuffing individual cellmates was found unconstitutional, and judicial intervention in day-to-day management of prisons likely runs afoul of the United States Supreme Court's well-heeded recognition in *Sandin v. Conner* that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." 515 U.S. 472, 482 (1995).

To show that Howes's particular process of cuffing Beltran was deliberately indifferent to a serious risk to his safety, Romero again offers Ely State prison policies—this time IP 7.38, which she claims obligated Howes to search the cell "on a daily basis," and it was his failure to do so that prevented Potter's shank from being discovered and thus Beltran's death prevented. Doc. 146 at 18; 146-20. But IP 7.38 suffers from the same authentication deficiencies as the other prison policies above. It is accompanied by the very same form (and unsworn) declaration of counsel that touts the document as self-authenticating but fails to provide me with the context and additional information I would need to agree with that assessment. And even if I were to consider this document, it merely directs the manner and method for cuffing and searching cells; there is no evidence that Howes or other prison staff did not conduct daily cell searches.

### iii. *Failure to instruct and supervise guards*

Romero also includes Howes in a list of defendants who "failed to properly instruct and supervise prison guards in appropriate procedures for guaranteeing inmate safety and compliance with State and federal law." Doc. 24 at 21. Howes contends that no evidence suggests he had supervisory authority at NDOC. Doc. 145 at 9-10. Romero alludes to Howes's "duty" to ensure Beltran's safety, but does not actually rebut the notion that Howes did not have supervisory authority at NDOC and, more importantly, she offers no evidence of Howes's supervisory authority. With no admissible evidence of Howes's supervisory authority, Romero's bald suggestion that Beltran's death was the result of Howes's failure to instruct and supervise prison guards is no barrier to summary judgment.

Plaintiff has therefore failed to come forward with admissible evidence to support any deliberate-indifference-to-safety theory to sustain her Eighth Amendment claim under § 1983.

### b. *No evidence of Howes's deliberate indifference to Beltran's medical needs*

Romero claims that Howes "failed to promptly obtain medical care for . . . Beltran after he was assaulted, thus failing to protect [his] life or adequately guarantee" his Eighth Amendment rights. Doc. 24 at 21. The Eighth Amendment obligates prison officials to provide a threshold level of medical care to inmates, and imposes Section 1983 liability only for deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). A trial judge's appraisal of Eighth Amendment violations should be "informed by objective factors to the maximum possible extent." *Rhodes*, 452 U.S. at 346 (quotation omitted). The Ninth Circuit has found that liability for deliberate indifference may stem from a prison official's denial, delay of, or intentional interference with medical treatment, or the means by which a physician actually provides medical care. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*). The Eighth Amendment's prohibition on cruel and unusual punishment "draw[s] its meaning from the evolving standards of decency

that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346 (quotation omitted). The Ninth Circuit has found that a delay in providing medical treatment is only deliberately indifferent when the delay causes substantial harm, with delays being especially probative where emergency treatment is required. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).

Howes moves for summary judgment on Romero's Eighth Amendment-violation claim, arguing there is no evidence to support this claim against him. He notes that the sworn interrogatory responses attest that "[s]taff response occurred within a 4 minute time frame including the restraining of inmate Potter and securing of inmate Beltran" because, as even plaintiff concedes in her statement of facts, Howes immediately called for back up. Docs. 148; 145-1 at 4; and 146 at 9 (noting that Howes "yelled to the control room that there was a fight with a weapon involved" and waited "for additional officers and medical personnel to arrive"). Romero baldly argues that "Howes had a duty and responsibility to provide Beltran with preliminary medical care" and "failed to provide that care." Doc. 146 at 19. She generally cites to "Exhibits 7-9" for this proposition, which consist of a self-serving declaration by attacker Potter giving his version of the events, a DVD that purports to contain the video of Potter's criminal trial, and NDOC incident reports. As I explained in my previous summary-judgment order when rejecting general references to groups of documents without pinpoint citations, "It is not the role of the Court to parse the parties' exhibits to construct the facts." *See* Doc. 144 at 17 n.15 (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). And, regardless, the trial video and the incident reports remain unauthenticated.[6]

---

[6] I found these documents inadmissible once before. *See* Doc. 144 at 17 n.15. Plaintiff has attempted to cure this deficiency by introducing these exhibits with the unsworn declaration of counsel and the sworn statement of a law-firm staff member, Jenna Enrico, that do nothing except state what counsel purports these

11

1    Romero also gestures to "Exhibit 16," Vasquez's expert report, for the sweeping and
conclusory statement that Howes . . . acted with deliberate indifference an/or reckless
disregard for the life and medical care of Beltran by his failure to perform his duties and
responsibilities by providing Beltran with necessary preliminary medical care to save
Beltran's life." Doc. 146 at 19. But Vasquez's report does not support this proposition; he
offers no criticism at all of the medical response. *See* Doc. 146-16. He does, however, note
that "by the time . . . Beltran was transported to the prison's medical unit he was pronounced
dead," and that the autopsy credits "multiple stab wounds which caused heart failure and
internal bleeding, as a result of 4 stab wounds to his hear, 5 stab wounds to his right lung,
and 5 stab wounds to his liver," as the cause of death. *Id*. at 8. Romero has not offered any
evidence that Howes acted with deliberate indifference to Beltran's medical needs in the
minutes between the attack and his resulting death. Howes's motion for summary judgment
on Romero's Eighth Amendment-violation theory is granted.

### 2. *Romero failed to submit evidence to support her equal-protection theory.*

Howes also challenges the evidentiary basis for Romero's final § 1983 theory: an
equal-protection violation. Doc. 145 at 10-11. "To state a claim under 42 U.S.C. § 1983 for
a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must
show that the defendants acted with an intent or purpose to discriminate against the plaintiff
based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194
(9th Cir. 1998); *see Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). On
summary judgment, a plaintiff "must produce evidence sufficient to permit a reasonable trier
of fact to find by a preponderance of the evidence that the challenged conduct was motivated

---

items to be. *See* Doc. 146-8 at 2; 146-9 at 2. These declarants do not demonstrate how they have personal knowledge of these items. *See Orr v. Bank of Amer.*, 285 F.3d 764, 773-74 (9th Cir. 2002); *cf. Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 742 (E.D. La. 2012) ("The fact that the document was produced by the opposing party in discovery is not conclusive as to its authenticity."). Indeed, the declarations by Enrico and attorney Potter, which appear to be the band-aid fix attempted to authenticate the documents I rejected in my prior order, have universally failed to accomplish that goal because these efforts still fall short under *Orr*, primarily because no evidentiary foundation has been laid for these documents or these witnesses' personal knowledge of their authenticity; simply stating that documents or items are "true and correct" copies is meaningless without personal knowledge. *See id.*

by discriminatory intent." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (quotation omitted). I granted summary judgment in favor of all other defendants on this claim after noting that Romero's complaint is rife with buzzphrases like "intentional discrimination of inmates of color" and "racial minority," but Romero's liability theory is that Beltran—perceived to be affiliated with the "Socialist White People's Party" and a sex offender—was celled with Potter, a member of the Aryan Warriors, who are known to assault and kill sex offenders. These classifications do not implicate equal protection. Doc. 144 at 23.

In response to Howes's motion, Romero makes zero effort to provide evidence of an equal protection violation; indeed, she reiterates that the conflict was one arising from rival *white* gangs. *See* Doc. 146 at 17. As Romero has offered no evidence to support an equal-protection violation § 1983 claim, Howes is entitled to summary judgment on this theory, too.

Romero has not offered admissible evidence creating genuine issues of material fact that preclude summary judgment on any of her § 1983 constitutional-rights-deprivation theories. Accordingly, summary judgment is entered in Howes favor on Romero's first claim for relief. Doc. 24 at 17-22.[7]

**C.     Remand of Remaining State-law Claim Under 28 U.S.C. §§ 1367(c) and 1447(c)**

Removal jurisdiction in this case was premised on the pendency of Romero's § 1983 claim and the court's exercise of supplemental jurisdiction over Romero's state-law claims. *See* Doc. 1 at 3; Doc. 24 at ¶ 14; 28 U.S.C. § 1367(a) (where a court properly exercises subject matter jurisdiction over a case, the court "shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy."). Supplemental jurisdiction is a doctrine of discretion, not of right. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). And 28 U.S.C. § 1447(c) dictates, "If at any time before final judgment it

---

[7] As I am granting the motion for summary judgment due to the absence of genuine issues of fact to support Romero's § 1983 claim, I need not—and do not—reach Howes's qualified-immunity argument.

appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A federal district court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In particular, the district court has discretion to remand a case to state court upon termination of all federal claims, "upon a proper determination that retaining jurisdiction over the case would be inappropriate." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 2001). The decision whether to decline to exercise supplemental jurisdiction under Section 1367(c) should be informed by the values of economy, convenience, fairness, and comity. *Acri v. Varian Associates, Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

Economy, convenience, fairness, and comity compel me to decline under 28 U.S.C. § 1367(c)(3) to continue to exercise supplemental jurisdiction over plaintiff's remaining claim. The entry of summary judgment in Howes's favor on the § 1983 claim leaves her with just a wrongful-death claim under Nevada law and me with no pending claims over which this court has original jurisdiction.[8] "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350. The subject matter of this case—an event occurring in Nevada's state prison system—is one in which Nevada has a unique interest. The remaining issues should be heard and determined in Nevada's state courts. Accordingly, I decline to retain supplemental jurisdiction over

---

[8] As I am remanding this case, I deny without prejudice the motion for summary judgment on the remaining wrongful death claim against Howes to permit the state court to consider these state-law issues.

plaintiff's remaining state-law claim and remand this action back to the Eighth Judicial District Court, Case No. A546038, for any and all further proceedings on the remaining wrongful death claim.

**Conclusion**

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

It is HEREBY ORDERED that Howes's Motion for Summary Judgment **[Doc. 145] is GRANTED in part and DENIED without prejudice in part:** summary judgment is entered in Howes's favor on plaintiff's First Cause of Action for Deprivation of Constitutional Rights Under 42 U.S.C. § 1983; Howes's motion for summary judgment on the wrongful death claim is denied without prejudice.

And as the dismissal of plaintiff's § 1983 claim against Howes leaves no claims over which this court has original jurisdiction, it is FURTHER ORDERED that this action is **REMANDED** back to the Eighth Judicial District Court, Case No. A546038, for all further proceedings.

The Clerk of Court is then instructed to close this case.

DATED September 30, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE